[No. B124669. Second Dist., Div. Three. Aug. 23, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DANTE LAVELLE HECTOR. Defendant and Appellant.

**COUNSEL**

Bruce Daniel Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Robert F. Katz and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.**—Dante Lavelle Hector appeals from the judgment entered following a jury trial which resulted in his conviction of second degree murder (Pen. Code, § 187, subd. (a)), during the commission of which he personally used a firearm (Pen. Code, § 12022.5, subd. (a)(1)). The trial court sentenced Hector to 25 years to life in prison.

Hector's contention the trial court erred in denying his motion to suppress his confession is without merit. Provisions of the California Constitution provide that statements taken in violation of *Miranda*[1] are to be excluded from evidence only to the extent required by the federal Constitution. Accordingly, we determine that under the "totality of the circumstances" test of *Fare v. Michael C.* (1979) 442 U.S. 707, 728 [99 S.Ct. 2560, 2573, 61 L.Ed.2d 197], Hector knowingly and voluntarily waived his *Miranda* rights and did not invoke them by requesting to speak to his mother during police questioning. The California Supreme Court's decision in *People v. Burton* (1971) 6 Cal.3d 375, 383-384 [99 Cal.Rptr. 1, 491 P.2d 793], is not irreconcilable with *Fare v. Michael C.* Both cases demand consideration of the circumstances surrounding a minor's request to speak to a parent to determine whether that request constitutes an invocation of the right to remain silent or a request for an attorney. Under either case, Hector's request to speak to his mother did not constitute an invocation of his *Miranda* rights.

The People's contention the judgment must be modified to impose a Penal Code section 1202.4 restitution fine and a Penal Code section 1202.45 parole revocation fine is without merit. The People waived the claim by failing to object to the trial court's omissions at sentencing.

We affirm the judgment.

### FACTS

At approximately 7:30 a.m. on October 21, 1996, Corey Clark was at the Winchell's Donut store at the corner of 108th Street and Crenshaw Boulevard in Inglewood. As he left the store, Clark heard several gunshots come from the direction of a blue Cutlass parked nearby. The car belonged to

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

Clark's friend, Rodney Rolison. As Clark ran toward the car, he saw two young men running away from it. When Clark got close to the car he realized Rolison, who was slumped over on the car's front seat, had been shot several times.

Inglewood Police Officer Heeseok Ahn responded to a call directing him to the site of the shooting. There, he saw Rolison being attended to by paramedics. After Rolison was transported to a hospital, Ahn remained at the scene for several hours. No gun or other weapon was found in or near the blue Cutlass.

Rolison died as a result of six gunshot wounds. During the autopsy, three expended bullets were removed from Rolison's body. All three bullets were .38- or .357-caliber, and had been fired from the same gun.

Inglewood Police Detective Mark Campbell investigated the incident. Campbell received information indicating 17-year-old Hector and another young man, Antoine Smith, were involved in the shooting. When police officers first attempted to detain Hector, he ran away. Later, on November 11, 1996, Hector was taken into custody, transported to the police station, and interviewed by two detectives.

During a three-hour videotaped interview, Hector first stated he had not been involved in the shooting. Later, he stated that he had been walking down the street with his friend, Antoine Smith, when Rolison drove up and asked them if they were members of the Crips gang. Hector, a member of the 111th Street Neighborhood Crips, recognized Rolison from a "prior incident." Rolison, a member of the rival Avenue Piru Blood gang, had antagonized Hector when the two were in custody. When Hector looked toward Rolison, he saw that Rolison's hands were "down somewhere as if he might have [had] a weapon." Hector pulled out his .38-caliber revolver and shot Rolison. He and Smith then ran from the scene.

## CONTENTIONS

Hector contends the trial court erred in denying his motion to suppress his confession. He asserts his request to speak to his mother was a clear invocation of his *Miranda* rights and that his subsequently obtained confession should have been excluded.

The People contend the judgment must be modified to impose a Penal Code section 1202.4 restitution fine and a Penal Code section 1202.45 parole revocation fine.

## DISCUSSION

1. *Motion to Suppress Evidence—Miranda.*

   a. *Background.*

Hector was interviewed at the police station by Detectives Chumley and Harkins on November 7, 1997. After asking Hector for some biographical information, Detective Chumley advised him of his constitutional rights pursuant to *Miranda v. Arizona, supra,* 384 U.S. 436. Hector indicated he had heard the *Miranda* warning before and that he understood it.

The entire interview lasted approximately three hours. Soon after the interview started, Hector asked the detectives if they would telephone his mother. A short time later, the following occurred: "HARKINS: Okay . . . , you're [*sic*] mom's not there. Ricky Edwards, . . . that's your step-father? . . . Okay I told him that you were here. [¶] [HECTOR:] Alright. [¶] HARKINS: And it's done. . . . We were going to talk to ya, and . . . he said he'd let your mom know [when she] got home[,] probably an hour, he said. . . . About an hour and she would be back."

After the detectives asked Hector a number of questions, he indicated he had not been involved in the shooting. Chumley then falsely told Hector that he had been identified as one of the two men who had run away from Rolison's car. Hector responded by telling the detective that he and Smith had been confronted by Rolison. Smith had then pulled out a gun and shot Rolison as he sat in his car. Since Hector runs faster than Smith, Smith handed the gun to Hector, who ran away with it.

After Hector and the detectives discussed how Smith and Hector had disposed of the gun, the detectives told Hector they thought he was leaving out some important facts. Hector, however, continued to insist that Smith had committed the shooting. After asking Hector additional questions, Detective Harkins told Hector that he believed Hector had been the one who shot Rolison.

The interview continued and, at times, Hector wept. He insisted he was telling the detectives the truth, then told them that he just wanted to go home. Hector told the detectives that he had not told his mother about the shooting.

Later in the interview, the following occurred, "HECTOR: [L]et me say something. . . . I'm thinkin like . . . should I just tell them that . . . I did

it. Just so . . . I can probably get . . . out of this or something. . . . But I don't wanna, just tell you . . . yeah, . . . alright . . . I'll tell you I did it. And . . . I go to court and . . . I can't be doing 25 to life . . . for no murder that I didn't even do. [¶] HARKINS: You know one of . . . the things that happens when people are confronted with situations and the[y're] in fear for their life. . . . They have to come talk to me. I have to talk to them. . . . [¶] HECTOR: Alright, if that's . . . what you want me to do, just let me speak to my mother. . . . [¶] . . . I'll tell my mother this [is] what I['m] 'bout to tell them. Whoop de woo whatever. You know just so I can try to get out of this. Cause I don't wanna . . . be put into this kind of situation. I (unintelligible) my mother man. That's what I'm try[ing] to tell ya'll you know the honest to god truth cause I told . . . . [¶] HARKINS: Doesn't . . . your mom . . . deserve the entire truth also? [¶] HECTOR: Yeah. [¶] HARKINS: Ok. And I . . . think that's what she wants. And . . . you know what people will respect you for the truth. . . . You'll get far more support with the truth from your . . . mom. . . ."

Rather than stop the interview, the detectives continued to ask Hector questions. At one point, Hector told the detectives that his mother would know he did not commit the shooting. After further questioning, Hector again denied shooting Rolison. Hector then spoke of his son, who had been "just born," and again started to weep. Hector asked Harkins whether he would be able to go home if he told the detective the truth. After Harkins told Hector he probably would not be going home, the following occurred, "HECTOR: Well . . . , after everything I tell you man, can I just call my mother? [¶] HARKINS: Yes you can. [¶] HECTOR: Promise me that man. [¶] HARKINS: I promise you, you can talk to your mother. [¶] HECTOR: Alright man. . . . Ain't shit I can do man . . . . [¶] HARKINS: [Y]ou're there at the car . . . . [Rolison is] giving you the confrontation. What . . . does he do? [¶] HECTOR: He pulled up and . . . me and [Smith] . . . just switched places. . . . He was standing in front of me, and I was standing in back of him. . . . [Rolison] came at us whoop de woo you know. He had his hand in his lap you know . . . . And I thought he was bout to shoot man. . . . I was scare[d] man. [¶] HARKINS: I know you did. And then what happened? [¶] HECTOR: And that's when (unintelligible) . . . I shot man."

Hector told the detective it had appeared to him that Rolison was holding something in his hand. Hector thought he was about to be killed, so he shot Rolison. After Hector told the detective how he had disposed of the gun, Hector again indicated he wished to call his mother. The transcript of the interview then indicates the following: "HARKINS: Ok [Hector], you spoke to your mom? Correct. Ok. . . ."

Harkins began to question Hector about the gun he had used during the shooting. At some point, Hector told Hawkins, "I know ya'll heard my

mother on the phone." After Hawkins and Hector had a further discussion regarding Smith's role in the shooting, Hector told the detective he was tired and wanted to rest. The following then occurred: "[HECTOR:] I'll be able to call my mother when I get to East Lake [jail]. Right? . . . [¶] HARKINS: Yeah. I mean is that . . . ok with you? [¶] [HECTOR:] I thought, you know I just thought . . . [¶] HARKINS: You want . . . to call her again from here? [¶] [HECTOR:] Yeah, that['s] what I thought. [¶] HARKINS: Alright. Well . . . I got to get a couple of answers from you . . . about your mom. . . . I'm back in one second."

At trial, defense counsel moved to suppress evidence of Hector's confession. Counsel asserted that when, just before he admitted shooting Rolison, Hector stated he wished to speak to his mother, he had invoked his *Miranda* rights and all questioning should have ceased. The trial court denied the motion to suppress. Applying a "totality of the circumstances" test, the court determined Hector "gave a full, free, intelligent, voluntary waiver of [his *Miranda*] rights" and "never once invoked [those] rights."

█ On appeal, Hector contends the trial court erred. Relying on the court's opinion in *People v. Burton, supra*, 6 Cal.3d 375, 383-384, he asserts his "request to speak to his mother for advice was a clear invocation of his right to remain silent which required questioning to immediately cease and made his subsequently given confession inadmissible."

b. *Discussion.*

In *People v. Burton, supra*, 6 Cal.3d at pages 383-384, the court held that when a "minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege. The police must cease custodial interrogation immediately upon exercise of the privilege. [If the police do not cease], the confession obtained by the subsequent questioning [is] inadmissible, and, therefore, the admission of such confession [is] prejudicial per se and compels reversal of the judgment . . . . [Citation.]"

Eight years later, the United States Supreme court considered whether the California Supreme Court, which had relied on its prior decision in *Burton*, had properly determined that a juvenile's request to have his probation officer present during custodial interrogation amounted to a per se invocation of the juvenile's Fifth Amendment rights under *Miranda*. In *Fare v.*

*Michael C., supra,* 442 U.S. 707, the court noted that, under federal law, the per se aspects of *Miranda* had not been extended beyond the scope of the holding of *Miranda* itself, i.e., that due to the unique role a lawyer plays in the adversary system, an accused's request for an *attorney* is considered a per se invocation of the accused's Fifth Amendment rights. (*Id.* at p. 719 [99 S.Ct. at p. 2568].) The minor's probation officer had not been in a position to offer the kind of legal assistance necessary to protect the juvenile defendant's legal rights. Accordingly, the California court erred in determining the minor's "request . . . to speak with his probation officer *per se* constituted an invocation of [his] Fifth Amendment right to be free from compelled self-incrimination[,]" and that his statements made during interrogation should have been suppressed. (*Id.* at p. 724 [99 S.Ct. at p. 2571], original italics.) Instead, "the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. [Citation.]" (*Id.* at pp. 724-725 [99 S.Ct. at pp. 2570-2571].) When determining whether a juvenile's waiver is voluntary, courts should consider the juvenile's "age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. [Citation.]" (*Ibid.*)

In 1982, California voters passed Proposition 8, which added section 28, subdivision (d) to article I of the California Constitution. That section provides in part: "Except as provided by statute hereafter enacted by . . . the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . ." Pursuant to section 28, subdivision (d), a court may exclude unlawfully obtained evidence only if exclusion is mandated by federal constitutional rules. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) While *In re Lance W.* involved evidence unlawfully seized in violation of the Fourth Amendment, its reasoning is equally applicable with regard to evidence seized in violation of an individual's constitutional rights to counsel and against self-incrimination. In *People v. Peevy* (1998) 17 Cal.4th 1184, 1188 [73 Cal.Rptr.2d 865, 953 P.2d 1212], the court recognized that "[p]rovisions of the California Constitution establish that statements taken in violation of *Miranda* are to be excluded from evidence in this state only to the extent required by the federal Constitution. [Citations.]" (See also *People v. May* (1988) 44 Cal.3d 309, 316, 318-319 [243 Cal.Rptr. 369, 748 P.2d 307].) Accordingly, in considering Hector's claim his request to speak to his mother was an invocation of his *Miranda* rights, we apply the "totality of the circumstances" test set forth in *Fare v. Michael C., supra,* 442 U.S. 707.

At the time of his interview, Hector was 17 years, three months old. He had substantial prior experience with the criminal justice system. At the age of 15, Hector was found to have committed robbery and was placed in camp for eight months. Approximately three months after his release from camp, Hector was found to have committed battery and attempted robbery and was again placed in camp. Approximately two months after this second release, Hector committed the present offense. Before Hector was questioned, Detective Chumley advised him of his *Miranda* rights. Hector indicated he had heard the warning before and that he understood it. Nothing in the record indicates Hector was of insufficient intelligence to understand the advisement and Hector does not argue on appeal that the interview was unconstitutionally coercive. (See *In re Bonnie H.* (1997) 56 Cal.App.4th 563, 578 [65 Cal.Rptr.2d 513].)

When Hector first asked to speak with his mother, a detective informed Hector that he had been unable to reach her, but had left a message with Hector's stepfather. Upon receiving this news, Hector did not indicate he wished to stop speaking with the detectives and instead readily continued to answer their questions. Later, Hector indicated he had not told his mother about the shooting and, shortly before he confessed, he again asked to speak with her. When Detective Harkins asked Hector whether his mother deserved to hear the truth, Hector indicated she did, then continued to discuss the shooting with the detectives. Hector's responses to the detectives' questions indicate, not that he wished to invoke his *Miranda* rights, but that he wanted to tell his mother about the shooting before she heard about it from someone else.

Hector argues that the court's decision in *People v. Burton, supra,* 6 Cal.3d 375, is "still good law," and when applied to the present case, demands the conclusion evidence of his confession should have been suppressed. In making this assertion he relies in part on *People v. Rivera* (1985) 41 Cal.3d 388 [221 Cal.Rptr. 562, 710 P.2d 362]. In *Rivera,* the defendant sought to exclude his confession in part on the ground that his request to contact his father constituted an invocation of his privilege against self-incrimination. Although the court rejected the claim on procedural grounds, in dicta it noted that, "Although *Fare* v. *Michael C., supra,* suggests that the *Burton* rule—equating a juvenile's request to speak to a parent with the invocation of his privilege against self-incrimination—may not be compelled by the *federal* self-incrimination clause, *Burton* has been an established part of California jurisprudence for well over a decade and it is appropriate to recognize its holding as one component of the state constitutional privilege against self-incrimination. [Citation.]" *(Id.* at p. 395.)

We believe the dicta in *Rivera* overstates the *Burton* rule. We do not doubt that a juvenile's request to speak to his or her parent must be considered as an indication that the minor wishes to invoke his or her *Miranda* rights. However, *Burton* does *not* set forth a per se rule; it does not state that whenever a juvenile asks to speak to his or her parent, interrogation must cease. Instead, a juvenile's request to speak to a parent must be construed as an invocation of his or her Fifth Amendment privileges *unless* there is "evidence demanding a contrary conclusion." (*People v. Burton, supra,* 6 Cal.3d at pp. 383-384.) Thus, application of the *Burton* rule requires consideration of the circumstances surrounding the minor's request. Viewed in this way, the rules of *People v. Burton* and *Fare v. Michael C.* are not irreconcilable.

Under the rule of *People v. Burton, supra,* 6 Cal.3d 375, as well as *under Fare v. Michael C., supra,* 442 U.S. 707, we determine that, in asking to speak to his mother, Hector was not invoking his *Miranda* privileges. A review of the evidence demands the conclusion that Hector was neither requesting an attorney nor asserting his right to remain silent. As we stated above, Hector was a 17-year-old young man with substantial prior experience with police and police procedures. When he was read his *Miranda* rights, he indicated he had heard them before and understood them. When Hector was informed that a detective had been unable to reach his mother, but had left a message for her, Hector did not indicate he wished to stop speaking with the detectives, but instead readily continued to answer their questions.

Our review of the "totality of the circumstances surrounding the interrogation" indicates Hector did not, by asking to speak with his mother, invoke his *Miranda* rights. (*Fare v. Michael C., supra,* 442 U.S. at p. 728 [99 S.Ct. at p. 2573]; see *People v. Burton, supra,* 6 Cal.3d at pp. 383-384 [minor's request to speak to parent must be taken as invocation of *Miranda* rights "in the absence of evidence demanding a contrary conclusion"].) The trial court properly denied Hector's motion to suppress his confession.

2. *Restitution and Parole Revocation Restitution Fines.*

■ The People assert the trial court erred in failing to impose a Penal Code section 1202.4 restitution fine and a suspended Penal Code section 1202.45 parole revocation fine. They contend this court must now correct the error by modifying the judgment to impose the fines. We disagree. Any objection the People may have had to the trial court's omission was waived by their failure to make it at the time of sentencing. (*People v. Tillman* (2000) 22 Cal.4th 300 [92 Cal.Rptr.2d 741, 992 P.2d 1109].)

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 2000.