[No. S163453. Jan. 28, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY LESSIE, Defendant and Appellant.

COUNSEL

Elisa A. Brandes, under appointment by the Supreme Court, for Defendant and Appellant.

Rourke F. Stacy, Deputy Public Defender (Los Angeles), Sherry Gold, Alternate Public Defender; Ji Seon Song; Michael McMahon; and Jonathan Laba for Los Angeles County Public Defender, Los Angeles County Alternate Public Defender, National Juvenile Defender Center, California Public Defenders Association and Pacific Juvenile Defender Center as Amici Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Ronald Jakob, Steven T. Oetting and Jennifer A. Jadovitz, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**WERDEGAR, J.**—We granted review to reexamine *People v. Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793] (*Burton*), in which this court fashioned a special rule to govern the application of *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*) to minors. *Miranda* requires courts in criminal cases to exclude, at least from the prosecution's case-in-chief, self-incriminatory statements made by the accused during custodial interrogation unless the accused has knowingly and voluntarily waived the Fifth Amendment privilege against self-incrimination, which in this context includes the rights to silence and the assistance of counsel. (*Miranda*, at p. 479; *Harris v. New York* (1971) 401 U.S. 222, 224–226 [28 L.Ed.2d 1, 91 S.Ct. 643]; see U.S. Const., 5th Amend.) Applying *Miranda*, this court held in *Burton* that a minor's request to see a parent before or during custodial interrogation "must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke [the] Fifth Amendment privilege." (*Burton*, at pp. 383–384.)

We conclude *Burton, supra*, 6 Cal.3d 375, is no longer good law. The *Burton* court based its holding on the United States Constitution, but *Burton*'s special rule for minors is inconsistent with the high court's subsequent decision in *Fare v. Michael C.* (1979) 442 U.S. 707 [61 L.Ed.2d 197, 99 S.Ct.

2560] (*Fare*), which requires courts to determine whether a defendant—minor or adult—has waived the Fifth Amendment privilege by inquiring into the totality of the circumstances surrounding the interrogation (*Fare*, at pp. 724–725).

## I. BACKGROUND

Defendant Tony Lessie, then 16 years old, was tried as an adult and convicted of second degree murder. (Pen. Code, § 187, subd. (a).) Defendant challenges his conviction, claiming the trial court prejudicially erred under *Burton, supra,* 6 Cal.3d 375, by admitting into evidence confessions he made during two custodial interrogations. Because defendant does not otherwise challenge the evidence underlying his conviction, we summarize the facts of the crime only briefly and focus on the circumstances of the interrogations.

The evidence at trial showed that Rusty Seau died in a street confrontation on June 9, 2005, in Oceanside. Police, acting on information identifying defendant as the shooter, arrested him at 6:40 a.m. on September 20, 2005, at the home of his aunt and uncle in Hemet as he attempted to escape through the rear window. Although defendant formally resided with his father in Vista, his father had reported him missing some months earlier. Defendant was, in his own words, "on the run from probation." Defendant admitted his role in the shooting during a custodial interrogation at a police station in Oceanside and again during a subsequent interrogation at juvenile hall. Defendant's confessions were generally consistent with the other evidence admitted at trial, including his own testimony.

Defendant claimed he had been forced to shoot by James Turner, with whom he had been living. Turner, who used the gang moniker "Black Jack" and claimed membership in gangs affiliated with the Crips, forced a confrontation with Seau and another man over an offense given earlier in the day. Defendant, who used the moniker "Blue Devil," denied belonging to a gang but admitted wanting to join. On the way to the confrontation, riding in a car with defendant and two others, Turner gave defendant a pistol and told him he "better shoot. You got to shoot somebody." Defendant described the shooting as "like an initiation thing" and believed he would be beaten or killed as "discipline" if he did not do as he was told. Upon arriving at the scene of the confrontation, defendant, Turner and the others found that Seau and his companion did not want to fight. Turner nevertheless "banged" on Seau by announcing his gang affiliation, which Seau in turn mocked, and Turner and a companion then attacked Seau. At this point, Turner shouted at defendant to shoot. As Seau attempted to run away, defendant shot him fatally in the back.

The issue before us, as mentioned, is whether the court erred in admitting defendant's confessions into evidence. Before trial, defendant moved to exclude both confessions from evidence, and the People moved to admit them. The evidence at the hearing on the motions consisted of the testimony of Detective Kelly Deveney, who participated in defendant's interrogation, and the transcripts, recordings and videotapes of the interrogations.

Detective Deveney testified she spoke with defendant about half an hour after he was taken into custody. She identified herself, told defendant that he was under arrest on a juvenile detention order and that he could, upon arrival in Oceanside, "make as many phone calls as he wanted to whomever he wanted." "And then I told him," Deveney continued, "I understand your aunt and uncle know that you're in custody; is there anyone else we need to notify? And he said yes, his father." Defendant did not, however, have his father's phone number. The drive to Oceanside took about an hour and a half. Upon arriving at the police station, defendant waited 10 minutes alone and was then given breakfast. After another 10 minutes, Detective Deveney entered with another officer, Detective Gordon Govier. After some small talk about food and the weather, the following exchange occurred:

"DEVENEY: Okay, we're getting that warrant confirmed now. I got the information, your dad's phone number. Do you want to make a call to him? Or did you want us to?

"LESSIE: I'd like to call him.

"DEVENEY: You would?

"LESSIE: M-hm.

"DEVENEY: Okay. So in the meantime, we've just got to fill out these papers. You go by Tony Lessie, right?"

A series of routine booking questions followed, after which Deveney read defendant his rights under *Miranda, supra,* 384 U.S. 436:

"DEVENEY: Okay. Tony because you're under age, you're only sixteen, and because you're in our facility, I have to read you your rights. Alright. So it's no big deal but I have to by law. You have the right to remain silent. Do you understand that? Can you say yes?

"LESSIE: Yeah.

"DEVENEY: Any statements you make may be used as evidence against you. Do you understand that?

"LESSIE: Yeah.

"DEVENEY: Okay. You have the right to the presence of an attorney, either retained or appointed free of charge, before and during questioning. Do you understand that?

"LESSIE: Yeah.

"DEVENEY: So you understand those rights?

"LESSIE: Yeah."

After more booking questions, the detectives asked defendant about his reasons for leaving his father's house, his prior commitment to juvenile hall, his relationship with Turner, Turner's involvement in identity-theft crimes and gangs, and defendant's own knowledge of gangs. Eventually the detectives mentioned the killing and told defendant that multiple witnesses and members of his own family had identified him as the shooter. After briefly denying involvement, defendant candidly confessed: "Well to just scratch everything, to just come clean with it: I was there, I was, I was there and I was the shooter. But the thing that happened was that if I didn't shoot, I was going to, you know what I'm saying, get hurt by the other people." A detailed confession followed.

After defendant had confessed, Detective Deveney asked defendant whether he was "alright" or "need[ed] a little break." Defendant replied, "I would like to talk to my dad." The following exchange occurred:

"DEVENEY: Let me go talk to Gordon for a minute, you can compose yourself. I'll be right back. Knock on the door if you need anything.

"LESSIE: Can I make a phone call to my dad?

"DEVENEY: Yes, you can. I'm going to bring a cell phone in to you and you can use it. In fact you can use it while we're taking the break okay. Do you have the number or do you want me to bring you the number Tony?

"LESSIE: No, I need it.

"GOVIER: Okay, we'll be right back.

"[long pause]

"DEVENEY: I'm sorry did you need something?

"LESSIE: I need to use the bathroom.

"DEVENEY: Bathroom. Well, our sergeant is getting you a Nextell, a phone, we're charging it up so you can call your dad in privacy. Okay.

"GOVIER: We're going to go out, straight out this door.

"[pause]

"DEVENEY: Well [sic] they're getting that phone Tony, we're just going to ask you another couple of quick questions, alright. And then we'll leave you alone in here and you can have whatever conversation you want with him."

The detectives then asked defendant additional questions about the persons involved in the confrontation and their gang affiliations. Eventually a telephone was brought to the interrogation room, the detectives left, and defendant unsuccessfully attempted to call his father. Defendant left this message: "Hey man, what's up? Dad is [sic] me, I'm in jail. So, see if you can, as soon as you get this, call back at this number."

Four months later, Detectives Deveney and Govier initiated a second interview with defendant, who was then in custody in juvenile hall. Advised once again of his rights under *Miranda, supra,* 384 U.S. 436, defendant agreed to answer questions. Defendant repeated his confession and provided additional details about the event and its participants.

At the hearing on whether to admit the confessions, defendant argued that *Burton, supra,* 6 Cal.3d 375, compelled the trial court to treat his request during the first interrogation to speak with his father as an invocation of his Fifth Amendment privilege. Based on this premise, defendant also argued the police had violated *Edwards v. Arizona* (1981) 451 U.S. 477 [68 L.Ed.2d 378, 101 S.Ct. 1880], by reinitiating contact with him in juvenile hall. (See *id.,* at pp. 484–485 [police may not further interrogate accused who invokes right to counsel unless accused reinitiates contact].) The court denied defendant's motion to exclude the confessions and granted the People's motion to admit them. Noting that *Burton* predated the state Constitution's Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)), the court described *Fare, supra,* 442 U.S. 707, and *People v. Hector* (2000) 83 Cal.App.4th 228 [99 Cal.Rptr.2d 469], as controlling authority against defendant's position. The court also found as a factual matter that defendant's purpose in asking to speak with his father had not been to assert his right to remain silent or to obtain the assistance of counsel. Because the court thus rejected defendant's

argument that he had invoked his Fifth Amendment privilege, defendant's additional argument that the second interrogation violated *Edwards* necessarily failed.

Defendant also moved unsuccessfully to exclude his confession on the alternative ground the police had violated their statutory duty to advise him of his right under Welfare and Institutions Code section 627, subdivision (b),[1] to complete telephone calls to a designated adult and to an attorney within an hour after being taken into custody. The court concluded the police had committed at least a technical violation of the statute but found no authority for excluding defendant's statements as a remedy.[2]

The jury convicted defendant of second degree murder (Pen. Code, § 187, subd. (a)) and found true the allegations that he had personally used and discharged a firearm, causing death (*id.*, §§ 12022.5, subd. (a), 12022.53, subd. (d)). The jury did not reach a verdict, and the court declared a mistrial, on the additional allegation that defendant had committed the murder for the benefit of a street gang. (*Id.*, § 186.22, subd. (b)(1).)

The Court of Appeal affirmed, and we granted defendant's petition for review.

## II. DISCUSSION

Defendant contends the trial court should have excluded his confessions from evidence and that the judgment must therefore be reversed. In support of his position, defendant argues that *Burton, supra,* 6 Cal.3d 375, is a valid

---

[1] The statute provides: "Immediately after being taken to a place of confinement pursuant to this article and, except where physically impossible, no later than one hour after he has been taken into custody, the minor shall be advised and has the right to make at least two telephone calls from the place where he is being held, one call completed to his parent or guardian, a responsible relative, or his employer, and another call completed to an attorney. The calls shall be at public expense, if the calls are completed to telephone numbers within the local calling area, and in the presence of a public officer or employee. Any public officer or employee who willfully deprives a minor taken into custody of his right to make such telephone calls is guilty of a misdemeanor." (Welf. & Inst. Code, § 627, subd. (b).)

[2] Defendant no longer maintains that Welfare and Institutions Code section 627, subdivision (b), requires the exclusion of his statements to the police. Indeed, the only relevant authority rejects exclusion as a remedy. (*People v. Castille* (2003) 108 Cal.App.4th 469, 489–490 [133 Cal.Rptr.2d 489], vacated on other grounds and remanded for further consideration in light of *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] *sub nom. Shields v. California* (2004) 541 U.S. 930 [158 L.Ed.2d 352, 124 S.Ct. 1653].) No other conclusion seems possible in light of the state Constitution's Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)), which generally precludes California courts from creating new exclusionary rules based on the state Constitution. (See *People v. May* (1988) 44 Cal.3d 309, 318–319 [243 Cal.Rptr. 369, 748 P.2d 307].)

statement of federal law and requires exclusion. In the alternative, defendant contends exclusion is required because an inquiry into the totality of the circumstances surrounding his interrogation does not show that he knowingly and voluntarily waived his Fifth Amendment privilege. (See *Fare, supra,* 442 U.S. 707, 724–725.) Neither argument has merit.

### A. *The Rule of* Burton.

In *Burton, supra,* 6 Cal.3d 375, this court presented its holding as an interpretation of the United States Constitution and the high court's decision in *Miranda, supra,* 384 U.S. 436. (See *Burton,* at pp. 381–384.) We reexamine *Burton* on that basis.

■ The basic rule of *Miranda, supra,* 384 U.S. 436, and its progeny, is familiar: Under the Fifth Amendment to the federal Constitution, as applied to the states through the Fourteenth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." (U.S. Const., 5th Amend.) "In order to combat [the] pressures [of custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights" to remain silent and to have the assistance of counsel. (*Miranda,* at p. 467.) "[I]f the accused indicates in any manner that he wishes to remain silent or to consult an attorney, interrogation must cease, and any statement obtained from him during interrogation thereafter may not be admitted against him at his trial" (*Fare, supra,* 442 U.S. 707, 709, citing *Miranda,* at pp. 444–445, 473–474), at least during the prosecution's case-in-chief (*Fare, supra,* at p. 718; *Harris v. New York, supra,* 401 U.S. 222, 224).

The defendant in *Burton, supra,* 6 Cal.3d 375, a 16-year-old minor, was convicted of murder based on his confession while in police custody. The defendant asked the police for permission to speak with his father but was refused. The police also refused the father's request to speak with his son. The defendant subsequently confessed after hearing and purporting to waive his rights under *Miranda, supra,* 384 U.S. 436. (*Burton,* at p. 379.) We reversed the conviction, concluding the defendant had adequately invoked his Fifth Amendment privilege by asking to speak with his father. (*Burton,* at pp. 381–384.)

This court began its analysis with the proposition that a suspect may invoke the Fifth Amendment privilege through "[a]ny words or conduct which 'reasonably appear[] inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time* . . . .' " (*Burton, supra,* 6 Cal.3d 375, 382, quoting *People v. Randall* (1970) 1 Cal.3d 948, 956 [83 Cal.Rptr. 658, 464 P.2d 114].) "It appears to

us," *Burton* continued, "most likely and most normal that a minor who wants help on how to conduct himself with the police and wishes to indicate that he does not want to proceed without such help would express such desire by requesting to see his parents. For adults, removed from the protective ambit of parental guidance, the desire for help naturally manifests in a request for an attorney. For minors, it would seem that the desire for help naturally manifests in a request for parents. . . . It is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian. It is common knowledge that this is the normal reaction of a youthful suspect who finds himself in trouble with the law." (*Burton*, at p. 382.)

Based on this reasoning, the court in *Burton, supra,* 6 Cal.3d 375, articulated the following rule: "[W]hen . . . a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege." (*Burton*, at pp. 383–384.)

■ This court decided *Burton, supra,* 6 Cal.3d 375, in 1971. Eleven years later, the voters amended the state Constitution to limit the courts' power to exclude relevant evidence from criminal proceedings. The 1982 Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)) provides that "relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court."[3] In *People v. May, supra,* 44 Cal.3d 309, 318 (*May*), we construed this provision as forbidding courts to exclude, on the authority of the state Constitution, self-incriminatory statements made during custodial interrogation. More specifically, we overruled a state constitutional rule (i.e., *People v. Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272]) barring the use for impeachment of statements taken in violation of *Miranda.* The defendant in *May* had argued the rule of *Disbrow* survived the Truth-in-Evidence provision because that provision expressly preserved "existing statutory rule[s] of evidence relating to privilege" (Cal. Const., art. I, § 28,

---

[3] In full, the provision declares: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." (Cal. Const., art. I, § 28, subd. (f)(2).)

subd. (f)(2)), and because Evidence Code section 940[4] incorporated *Disbrow*'s holding by reference. (*May*, at pp. 315–316.) We rejected the argument, observing that, "[g]iven the probable aim of the voters in adopting [the Truth-in-Evidence provision], namely, to dispense with exclusionary rules derived solely from the state Constitution, it is not reasonably likely that the California voters intended to preserve, in the form of a 'statutory' privilege, a judicially created exclusionary rule *expressly rejected* by the United States Supreme Court under the federal Constitution." (*May*, at p. 318.)

██ Of course, the high court's decisions excluding self-incriminatory statements under the authority of the federal Constitution, such as *Miranda*, *supra*, 384 U.S. 436, and its progeny, continue to bind the state courts under the federal Constitution's supremacy clause (U.S. Const., art. VI, cl. 2) despite the Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)). Accordingly, whether the holding in *Burton*, *supra*, 6 Cal.3d 375, remains valid depends on whether it is compelled by federal constitutional law.

The *Burton* court did, as noted, base its decision on the Fifth Amendment to the federal Constitution. (See *Burton*, at pp. 379, 381–384.) Defendant, noting the high court has never expressly overruled *Burton*, argues the decision remains a valid statement of federal law and, for that reason, unaffected by the Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)). Defendant's position cannot be sustained. Although the high court has not expressly overruled *Burton*, the rule of that case does not withstand the reasoning and holding of *Fare*, *supra*, 442 U.S. 707.

In *Fare*, *supra*, 442 U.S. 707, the United States Supreme Court reversed a decision of this court extending the rule of *Burton*, *supra*, 6 Cal.3d 375. This court's decision, *In re Michael C.* (1978) 21 Cal.3d 471 [146 Cal.Rptr. 358, 579 P.2d 7] (revd. *sub nom. Fare*, *supra*, 442 U.S. 707) involved a 16-year-old minor who had been committed to the California Youth Authority based on a finding that he had committed murder. The evidence against the minor included a confession made while in police custody. Before confessing, the minor had asked to speak with his probation officer but was refused permission. (*In re Michael C.*, *supra*, at pp. 473–474.) This court excluded the confession and reversed the judgment. Analogizing to *Burton*, the court held "that the minor's request for his probation officer—essentially a 'call for help'—indicated that the minor intended to assert his Fifth Amendment privilege." (*In re Michael C.*, *supra*, at p. 476.) Given "the emphasis which the juvenile court system places upon the close relationship between a minor

---

[4] "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." (Evid. Code, § 940.)

and his probation officer," the court reasoned, a minor's " 'normal reaction' " in case of trouble would be to "ask[] for his probation officer—a personal advisor who would understand his problems and needs and on whose advice the minor could rely." (*Ibid.*, fn. omitted.) The court described its holding as "recogniz[ing] the role of the probation officer as a trusted guardian figure who exercises the authority of the state as *parens patriae* and whose duty it is to implement the protective and rehabilitative powers of the juvenile court." (*Ibid.*)

The high court in *Fare, supra,* 442 U.S. 707, reversed. The court held that *In re Michael C., supra,* 21 Cal.3d 471, had unjustifiably extended *Miranda, supra,* 384 U.S. 436, by treating a suspect's request to speak with someone other than an attorney as an invocation of the Fifth Amendment privilege. (*Fare,* at pp. 722–723.) Underlying *Miranda,* the high court explained, is the recognition that " '*the attorney* plays a vital role in the administration of criminal justice under our Constitution' " (*Fare,* at p. 722, italics added); "[i]t is this pivotal role of legal counsel that justifies the *per se* rule established in *Miranda,* and that distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend" (*ibid.*). Unlike an attorney, a probation officer cannot serve as an "effective protector of the rights of a juvenile suspected of a crime" (*ibid.*) because he is "a peace officer" of "the State [that] seeks to prosecute the alleged offender," and is required in most cases to report wrongdoing and even to prosecute minors under his supervision. (*Id.,* at p. 720.) Accordingly, the high court concluded, to treat a minor's request to speak with a probation officer as an invocation of the Fifth Amendment "would impose the burdens associated with the rule of *Miranda* on the juvenile justice system and the police without serving the interests that rule was designed simultaneously to protect. If it were otherwise, a juvenile's request for almost anyone he considered trustworthy enough to give him reliable advice would trigger the rigid rule of *Miranda.*" (*Fare,* at p. 723.)

■ Defendant in the case before us argues that *Burton, supra,* 6 Cal.3d 375, survives the high court's decision in *Fare, supra,* 442 U.S. 707, because *Fare* addresses probation officers rather than parents and does not expressly overrule *Burton. Fare* cannot be read so narrowly. After rejecting the argument that probation officers should be treated like attorneys for purposes of *Miranda, supra,* 384 U.S. 436, the high court in *Fare* painstakingly reiterated the rule that only a request for *an attorney* constitutes a per se invocation of a suspect's Fifth Amendment privilege. When no such request is made, the court held, "the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of

counsel." (*Fare*, at pp. 724–725.) "This totality-of-the-circumstances approach," the court continued, "is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved." (*Id.*, at p. 725.) "Where the age and experience of a juvenile indicate that his request for his probation officer *or his parents* is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination." (*Ibid.*, italics added.)

The last sentence quoted (from *Fare*, *supra*, 442 U.S. 707, 725), in which the high court for purposes of *Miranda*, *supra*, 384 U.S. 436, equated a minor's request to see a parent with a request to see a probation officer, leaves the rule of *Burton*, *supra*, 6 Cal.3d 375, 383–384 (concerning parents) with no more basis in federal law than the rule of *In re Michael C.*, *supra*, 21 Cal.3d 471, 476 (concerning probation officers), which the court in *Fare* expressly disapproved.

Various public defender organizations, appearing here as amici curiae, suggest the rule of *Burton*, *supra*, 6 Cal.3d 375, "is a necessary protection for the children and adolescents of California because it recognizes the practical reality that juveniles in custody are much more likely to request a parent than specifically to ask for counsel or to invoke their right to silence." Amici curiae cite studies concluding that juveniles are more vulnerable than adults to suggestion and manipulation during custodial interrogation, and note that some other states provide special statutory protections to juveniles facing custodial interrogation, such as requiring a parent or attorney to be present during interrogation[5] or to participate in any waiver of the minor's Fifth Amendment rights.[6] Similar concerns may have motivated the California Legislature's decision to give minors the right to complete telephone calls to a designated adult and an attorney within an hour after being taken into custody and to punish as a misdemeanor willful interference with that right. (Welf. & Inst. Code, § 627, subd. (b); see, *ante*, at p. 1161, fn. 1.)

■ Certainly a court faces special problems in determining whether a minor who purports to waive the Fifth Amendment rights to silence and the assistance of counsel in the context of custodial interrogation does so knowingly and voluntarily. The high court, in holding that these constitutional protections apply to minors, "emphasized that admissions and confessions of juveniles require special caution" (*In re Gault* (1967) 387 U.S. 1, 45 [18 L.Ed.2d 527, 87 S.Ct. 1428]) and that courts must use "special care in

---

[5] E.g., Colorado (Colo. Rev. Stat. § 19-2-511(1)); Connecticut (Conn. Gen. Stat. § 46b-137(a)); Maine (Me. Rev. Stat. tit. 15, § 3203-A, subd. 2-A).

[6] E.g., Indiana (Ind. Code § 31-32-5-1); Iowa (Iowa Code § 232.11, subds. 1.a & 2); New York (N.Y. Fam. Ct. Act § 305.2, subd. 7).

scrutinizing the record" to determine whether a minor's custodial confession is voluntary (*Haley v. Ohio* (1948) 332 U.S. 596, 599 [92 L.Ed. 224, 68 S.Ct. 302]). These cautions remain applicable today. Nevertheless, the Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)) leaves us with no power to exclude a minor's self-incriminatory statements except as federal law requires, and federal law requires us to apply not the presumptive rule of *Burton, supra,* 6 Cal.3d 375, 383–384, but the totality-of-the-circumstances rule of *Fare, supra,* 442 U.S. 707, 724–726.

This conclusion does not mean that courts must blind themselves to the differences between minors and adults in this context. As the high court in *Fare, supra,* 442 U.S. 707, emphasized, "[t]he totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." (*Fare,* at p. 725.) Furthermore, "[t]here is no reason to assume that [courts dealing with waiver issues] . . . will be unable to apply the totality-of-the-circumstances analysis so as to take into account those special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved. . . . At the same time, that approach refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation." (*Fare,* at pp. 725–726.)

The lower courts, obliged to follow both the high court's decisions (see U.S. Const., art. VI, cl. 2 [supremacy clause])[7] and our own (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]),[8] have generated confusion by attempting to reconcile the rule of *Burton, supra,* 6 Cal.3d 375, which presumes that a minor invokes the Fifth Amendment privilege by asking for a parent, with the totality-of-the-circumstances approach adopted in *Fare, supra,* 442 U.S. 707. The court in *People v. Hector, supra,* 83 Cal.App.4th 228 (*Hector*), for example, wrote that "*Burton* does *not* set forth a per se rule; it does not state that whenever a juvenile asks to speak to his or her parent, interrogation must cease. Instead, a juvenile's request to speak to a parent must be construed as an invocation of his or her Fifth Amendment privileges *unless* there is 'evidence demanding a

---

[7] "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." (U.S. Const., art. VI, cl. 2.)

[8] "The decisions of this court are binding upon and must be followed by all the state courts of California." (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d 450, 455.)

contrary conclusion.' " (*Hector*, at p. 237, quoting *Burton*, at pp. 383–384.) The Court of Appeal in the case before us followed *Hector* to the same conclusion.

We appreciate the difficulty that a long-standing, unresolved conflict between binding precedents creates for the lower courts.[9] In our view, however, the special rule for minors announced in *Burton, supra,* 6 Cal.3d 375, cannot fairly be rationalized, or correctly perpetuated, as nothing more than a restatement of the federal totality-of-the-circumstances test. By its own terms, *Burton* requires courts to give at least presumptive weight to a minor's request to see a parent in determining whether the minor has invoked the Fifth Amendment privilege. This is more than federal law compels. As the court in *Fare, supra,* 442 U.S. 707, 725, explained, "[w]here the age and experience of a juvenile indicate that his request for his . . . parents is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination." That *Burton* goes beyond the unadorned totality-of-the-circumstances test in attributing weight to a minor's request for a parent is clear; precisely how much farther it goes is not. But however far beyond that test *Burton* does go, it goes too far. The Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)) permits the courts of this state to exclude a defendant's self-incriminatory statements only under the *compulsion* of federal law (*May, supra,* 44 Cal.3d 309, 318).

■ For these reasons, we conclude the rule of *Burton, supra,* 6 Cal.3d 375, does not represent a valid interpretation of federal law and thus cannot withstand the preemptive effect of the Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)). We therefore disapprove *Burton*'s holding on this point.[10]

---

[9] In *People v. Lewis* (2001) 26 Cal.4th 334 [110 Cal.Rptr.2d 272, 28 P.3d 34], we noted the issue now before us but found the factual record inadequate to determine whether the "defendant's request to speak to his mother constituted an invocation of his Fifth Amendment right . . . ." (*Id.,* at p. 386.) Unable to "speculate" what facts might have given rise to a claim under *Burton, supra,* 6 Cal.3d 375, we applied the totality-of-the-circumstances test of *Fare, supra,* 442 U.S. 707, to conclude that the defendant had validly waived his Fifth Amendment privilege. (*People v. Lewis, supra,* at pp. 383–385.)

[10] For the same reason, we disapprove dictum in *People v. Rivera* (1985) 41 Cal.3d 388 [221 Cal.Rptr. 562, 710 P.2d 362] to the effect that the rule of *Burton, supra,* 6 Cal.3d 375, survives the high court's holding in *Fare, supra,* 442 U.S. 707, as a "component of the state constitutional privilege against self-incrimination." (*Rivera, supra,* at p. 395; see Cal. Const., art. I, § 15.) The court in *Rivera* did not mention the state Constitution's Truth-in-Evidence provision. (Cal. Const., art. I, § 28, subd. (f)(2).)

## B. *The Instant Case.*

■ When a court's decision to admit a confession is challenged on appeal, "we accept the trial court's determination of disputed facts if supported by substantial evidence, but we independently decide whether the challenged statements were obtained in violation of *Miranda*[, *supra*, 384 U.S. 436]." (*People v. Davis* (2009) 46 Cal.4th 539, 586 [94 Cal.Rptr.3d 322, 208 P.3d 78].) As *Fare*, *supra*, 442 U.S. 707, 725, requires, we inquire "into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel." Because defendant is a minor, the required inquiry "includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." The prosecution bears the burden of demonstrating that the challenged waiver is valid by a preponderance of the evidence. (*People v. Dykes* (2009) 46 Cal.4th 731, 751 [95 Cal.Rptr.3d 78, 209 P.3d 1].)

Nothing in the record suggests defendant was unable to understand, or did not understand, the meaning of the rights to remain silent and to have the assistance of counsel, and the consequences of waiving those rights. Defendant was, at the time of his interrogation, 16 years old and, while no longer in school, had completed the 10th grade and held jobs in retail stores. While no evidence was offered that defendant had, or had not, previously been advised of his rights under *Miranda*, *supra*, 384 U.S. 436, he was no stranger to the justice system. Defendant had been arrested twice before, once for burglary and making criminal threats, and once for fleeing police after a traffic stop and possessing marijuana. Both sets of charges led to proceedings in juvenile court, and the second resulted in a commitment to juvenile hall. Nothing in this background, or in the transcript of defendant's interrogation, suggests his decision to waive his *Miranda* rights was other than knowing and voluntary. Asked by detectives to confirm that he understood each right as read to him, he answered affirmatively four times. While defendant did not expressly waive his *Miranda* rights, he did so implicitly by willingly answering questions after acknowledging that he understood those rights. (*People v. Cruz* (2008) 44 Cal.4th 636, 667–668 [80 Cal.Rptr.3d 126, 187 P.3d 970].)

■ The only apparent reason to question the validity of defendant's waiver is his claim that, by asking to speak with his father, he intended to exercise his Fifth Amendment rights and that the police induced him to waive his rights by withholding a telephone until after he had confessed. To be sure, the police chose to continue questioning defendant rather than allowing him

to use the telephone. The trial court noted this with evident frustration[11] in concluding the police had committed "at least a technical violation" of Welfare and Institutions Code section 627, subdivision (b), by not advising defendant that he had the right to make telephone calls within an hour after being taken into custody. The bare violation of section 627, however, has very limited relevance in the present context. The Legislature has not authorized exclusion as a remedy for such violations, and the Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f)(2)) bars courts from creating such a remedy under the state Constitution. (*May, supra,* 44 Cal.3d 309, 318–319.) Defendant's confession would be subject to exclusion under the federal Constitution if the totality of the relevant circumstances demonstrated that his purpose in asking to speak with his father was to invoke his Fifth Amendment privilege. (See *Fare, supra,* 442 U.S. 707, 725.) The facts of the case, however, do not support such a conclusion. The trial court specifically found there was no connection between defendant's request to speak with his father and his decision to waive his Fifth Amendment rights.[12] We see no reason to reject this finding. Defendant did not say, for example, that he wanted to speak with his father before answering questions or wanted his father to call an attorney on his behalf. Nor did defendant hesitate at any point to answer the detectives' questions.

Under these circumstances, we see no basis for construing defendant's request to speak with his father as an invocation of his Fifth Amendment rights. Accordingly, and for the additional reasons discussed above, the totality of the relevant circumstances supports the trial court's conclusion that defendant knowingly and voluntarily waived his Fifth Amendment privilege. (*Fare, supra,* 442 U.S. 707, 725.) That his confessions were properly admitted into evidence necessarily follows.

---

[11] The trial judge observed: "Then they get to the Oceanside P.D., and [defendant] gets there, by [Detective Deveney's] testimony, around 8:30 to 8:45 he gets in the room. And he sits around there for about a half hour. And then [Deveney] comes in and starts talking to him, and one of the first things that he says is I want to talk to my dad. So I—if I'm being asked to find that that is not at least a technical violation of Welfare and Institutions Code section 627(b), I can't find that. He asked for a phone. It's hard for me to believe that there was not a cell phone available anywhere at Oceanside P.D. at that time. [Deveney] chose to keep talking to him for an appreciate period of time. And whether it was 45 minutes, or one hour, or one-and-a-half hours, I think it's probably at a minimum a technical violation of this Welfare and Institutions Code provision."

[12] The trial judge found: "I don't see any tie-in whatsoever between the defendant's statement that he wants to talk to his father and the *Miranda* rights. He was given his *Miranda* rights. He said that he understood them. It appears that [Detective Deveney] didn't ask the follow-up question of 'are you agreeing to speak with us,' but in the context of the conversation, he never says anything close to, 'I'd like to remain silent;' 'I don't want to talk;' 'I'm not gonna answer any of those questions;' 'Can I get a lawyer'—anything that would be an invocation of his 5th or 6th Amendment rights."

### III. Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.