Filed 5/29/13  P. v. Keller CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054119 |
| v. | (Super.Ct.No. SICRF 09-49493) |
| EDWARD GEORGE KELLER, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Inyo County.  Brian J. Lamb, Judge.

Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant, Edward George Keller, Jr. (defendant), appeals from the judgment entered after a jury found him guilty of second degree murder, as a lesser included offense of the charged crime of first degree murder, found true the allegation that he personally used a deadly weapon in the commission of the crime, and the trial court sentenced him to serve a determinate term of one year in state prison, followed by an indeterminate term of 15 years to life.

Defendant raises two claims of error in this appeal. First, he contends his confession to the police was obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) because the prosecution did not show that defendant voluntarily waived his right to remain silent and his right to have his attorney present. Therefore, defendant contends the trial court should have granted his motion to exclude that confession from evidence. Defendant's second claim of error is that several jurors engaged in prejudicial misconduct by commenting during the jury's deliberations on the fact that defendant had not testified at trial and, therefore, the trial court erred in denying defendant's motion for a new trial based on that misconduct.

We will affirm the judgment because we conclude no error occurred.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed. On the evening of November 26, 2009, Jimmy Williams was bludgeoned to death with an object referred to in the trial court as a "weight bar." The issue at trial was the identity of the killer. The crime took place in the living room of the home where defendant, then 17 years old, lived with his mother and other family members. Defendant, along with Williams, Morgan "Jake" Kinney, and

various other people had been drinking beer, rum, and peppermint schnapps over the course of several hours. An argument apparently arose about whether Williams was mistreating Kinney, who appeared to be suffering an alcohol induced seizure.

Shortly after 10:00 p.m., Brenda Allen, who was Williams's girlfriend, was standing outside the front door of defendant's house, waiting for someone to open the door in response to her knock. While waiting, Allen heard what she described as a "hitting noise," then she heard defendant's sisters say, "Stop Eddie, don't, don't, Eddie, stop." She also heard a male voice say, "No, Eddie, no, oh, Eddie." When the door opened, defendant ran out of the house and down the driveway. Allen ran to Williams when she spotted him lying on the floor with blood running from his head. She screamed for someone to call 911.

When law enforcement officers arrived, they found Williams and Kinney lying near each other on the floor. Williams had blood coming from his head and mouth. He had no pulse. Kinney was conscious but yelling incoherently. He had blood spatters on his shirt, which along with the weight bar found near him, caused officers to suspect Kinney had killed Williams.

Outside, Officer Gillespie was setting up a perimeter around the house. When he directed the beam of his flashlight on an area of high weeds, defendant stood up and came out from where he had been hiding. In response to Officer Gillespie asking what defendant was doing, defendant said he lived in the house but that he had left about 30 minutes earlier. Defendant also said he knew what had happened but he was not going to say. Officer Gillespie took defendant to Deputy Rennie. Defendant admitted to Deputy

3

Rennie that he was drunk. He then became aggressive and started to scream incomprehensibly. As a result, the deputy arrested defendant for being intoxicated in public, which was a violation of defendant's juvenile probation. Deputy Rennie tried to talk with defendant again, at the police station, but defendant told her he did not want to talk. When interviewed by two sheriff's deputies on December 1, 2009, defendant admitted he had hit Williams with the weight bar.

Additional facts will be recounted below as pertinent to the issues defendant raises on appeal.

## DISCUSSION

## 1.

### *MIRANDA* ISSUE

Inyo County Sheriff's deputies, Sergeant Hollowell and Investigator Williams, interviewed defendant on November 27, 2009, in juvenile hall, after defendant's arrest for violating his probation, and also on December 1, before defendant's first court appearance on that violation. Investigator Williams recorded the audio portion of both interviews using a microphone concealed in his jacket. Before the first interview, Investigator Williams advised defendant of his *Miranda* rights, i.e., the right to remain silent, the fact that anything defendant said could be used against him, the right to have an attorney present, and the right to have an appointed attorney if he could not afford one. Defendant acknowledged he understood each of those rights. Defendant then answered the deputies' questions, and identified Kinney as the person who hit Williams with the weight bar. Before the second interview, on December 1, the deputies again advised

4

defendant of his *Miranda* rights, and defendant again acknowledged that he understood those rights. Defendant then answered the deputies' questions, providing more details about what had happened on the night of November 26. Eventually, Sergeant Hollowell told defendant that his story did not add up, and then asked, "Why'd you hit him? Eddy, was it because he was beating up Jake? What was it?" Defendant then admitted he beat Williams because Williams was "beating up Jake," "punching the shit out of him. He was kicking him, he was punching him."

At his preliminary hearing, defendant moved to exclude the statements he had made to Sergeant Hollowell and Investigator Williams. Defendant argued that although he had been advised of his rights under *Miranda*, he did not fully understand those rights, did not expressly waive them and, in any event, the law enforcement officers who questioned him knew defendant was represented by counsel so, at the very least, they obtained defendant's statement in violation of his constitutional right to counsel.

After a hearing at which defendant presented various witnesses, the trial court denied defendant's motion to suppress his confession. In doing so, the trial court found that before both interviews, defendant was advised of each of his *Miranda* rights, defendant acknowledged he understood each of those rights, and he impliedly waived those rights, as evidenced by the fact that after the advisements, defendant answered the deputies' questions. The trial court also found that defendant voluntarily spoke with the deputies, and that his statements were not the result of coercion. In addition, the trial court found that the deputies did not violate defendant's Sixth Amendment right to counsel because defendant was represented by counsel in the violation of probation

5

matter, based on his public intoxication, and the deputies did not question him about that case. Questioning defendant about the uncharged homicide did not violate defendant's right to counsel.

Defendant contends in this appeal that the trial court incorrectly admitted defendant's statements into evidence at trial.

## A. Standard of Review

On appeal, we review "issues relating to the suppression of statements made during a custodial interrogation . . . under federal constitutional standards." (*People v. Nelson* (2012) 53 Cal.4th 367, 374 (*Nelson*).) In reviewing the trial court's ruling on a *Miranda* issue, we accept the trial court's resolution of disputed facts, if it is supported by substantial evidence; but we independently determine from the facts, both undisputed and as resolved by the trial court, whether the challenged statement or confession was obtained illegally. (*People v. Samayoa* (1997) 15 Cal.4th 795, 829.)

## B. Analysis

""""[U]nder the familiar requirements of *Miranda*, . . . a suspect may not be subjected to custodial interrogation unless he or she knowingly and intelligently has waived the right to remain silent, to the presence of an attorney, and to appointed counsel in the event the suspect is indigent."" [Citations.]" (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 829.)

Defendant contends in this appeal, as he did in the trial court, that he did not lawfully waive his *Miranda* rights. Defendant does not dispute that waiver of *Miranda* rights may be inferred from the fact that he answered questions after being advised of

6

those rights. An express waiver is not required, even when the suspect is a minor. (*People v. Lessie* (2010) 47 Cal.4th 1152, 1169.) "To establish a valid waiver of *Miranda* rights, the prosecution must show by a preponderance of the evidence that the waiver was knowing, intelligent, and voluntary. [Citations.]" (*Nelson*, *supra*, 53 Cal.4th at pp. 374-375.) "Determining the validity of a *Miranda* rights waiver requires 'an evaluation of the defendant's state of mind' [citation] and 'inquiry into all the circumstances surrounding the interrogation' [citation]. When a juvenile's waiver is at issue, consideration must be given to factors such as 'the juvenile's age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'" (*Id*. at p. 375, quoting *Fare v. Michael C.* (1979) 442 U.S. 707, 725.)

The facts in this case are undisputed. Both times sheriff's deputies questioned defendant, they advised him of his *Miranda* rights, defendant acknowledged he understood those rights, and then answered the deputies' questions. Defendant was 17 years old at the time of the questioning and had a record as a juvenile, which included a matter for which he then was on probation. Defendant understood the meaning of the right to remain silent as evidenced by the fact that on November 26, 2009, after his arrest, he told Deputy Rennie he did not want to talk to her when she tried to question him a second time. As a result of his prior juvenile court matter, in which he was represented by a court-appointed attorney, defendant knew the meaning of the right to counsel, but he did not invoke that right. Defendant did not ask to talk with an attorney even when the

7

attorney representing him in connection with the violation of probation came to the door of the room where the deputies were conducting the second interrogation and asked to talk with defendant.

Defendant would have us conclude that he did not knowingly waive his *Miranda* rights because he had spent much of his youth in juvenile detention facilities, a fact he contends supports the reasonable inference that "he had less than an optimal education." The cited fact does not support the claimed inference. It is just as likely that defendant obtained an adequate education in juvenile detention. But even if defendant's education had been less than "optimal," as he claims, that assertion is far too amorphous to support an inference that defendant did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Similarly, defendant asserts that during his first interrogation, he was feeling ill from his consumption of alcohol the previous night. That fact does not support the further inference that the residual effects of his alcohol consumption precluded him from knowingly, intelligently, and voluntarily waiving his *Miranda* rights during the first interrogation.

Defendant also contends the deputies violated his Sixth Amendment right to counsel because they excluded his attorney and family from the second interrogation. As defendant acknowledges, the right to counsel is offense specific. (See *McNeil v. Wisconsin* (1991) 501 U.S. 171, 175.) This is true, even when two offenses are factually related. (See *People v. Slayton* (2001) 26 Cal.4th 1076, 1079-1080, citing *Texas v. Cobb* (2001) 532 U.S. 162.) When the deputies interrogated defendant about the homicide, defendant was not represented by an attorney in connection with that crime because

defendant had not been charged with that offense. Therefore, defendant had to invoke his right to counsel in order to terminate the interrogation. Because defendant was not represented by an attorney in connection with the homicide, the deputies did not violate defendant's constitutional right to counsel when they told his attorney on the probation violation that they were questioning defendant on an unrelated matter. Nor were the deputies obligated to notify defendant's parents in order for defendant to validly waive his *Miranda* rights. (See *Nelson*, *supra*, 53 Cal.4th at p. 375.)[1]

In short, we conclude the prosecution met its burden of demonstrating that defendant knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present when questioned. The trial court further correctly concluded that defendant's Sixth Amendment right to counsel was not violated in this case. Consequently, we must conclude the trial court correctly denied defendant's motion to exclude the statements he made to Sergeant Hollowell and Investigator Williams.

---

[1] By the time defendant's sister tried to deliver the message that defendant should not say anything without an attorney or his parents present, defendant had already confessed to the homicide.

**2.**

**JUROR MISCONDUCT CLAIM**

Defendant contends several jurors engaged in misconduct during their deliberations because they considered the fact that defendant did not testify at trial in reaching their guilty verdict. Defendant raised this issue in a motion for new trial, which the trial court denied. Defendant contends in this appeal that the trial court erred in denying his new trial motion.

**A.  Standard of Review**

"In resolving a question of whether jury misconduct occurred, we 'accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' [Citation.] Juror misconduct raises a rebuttable presumption of prejudice. The presumption may be rebutted by proof that prejudice did not actually result." (*People v. Mendoza* (2000) 24 Cal.4th 130, 195.)

"Ultimately, the test for determining whether juror misconduct likely resulted in actual bias is 'different from, and indeed less tolerant than,' normal harmless error analysis. [Citations.] If the record shows a substantial likelihood that even one juror 'was impermissibly influenced to the defendant's detriment,' reversal is required regardless of whether the court is convinced an unbiased jury would have reached the same result. [Citations.]" (*People v. Cissna* (2010) 182 Cal.App.4th 475, 488.)

## B. Analysis

Defendant based his new trial motion on declarations obtained from three trial jurors. The prosecutor submitted declarations obtained from seven jurors, three of whom were the same jurors who had provided declarations to defendant. One of the declarations submitted by the prosecutor was not signed under penalty of perjury, and the trial court found that declaration to be inadmissible.

The nine admissible declarations establish that early in their deliberations, either in the jury deliberation room, or possibly during a break, at least one juror "discussed the fact that [defendant] did not testify. Several jurors made statements to the effect that they would have been 'on the stand' in a case such as this." Another juror said that while one juror had made a comment to that effect, "[s]ome other jurors shook their heads . . . and said, 'Oh yeah, me too, I would have done it for sure.'" Other members of the jury reminded the group that they were not to discuss the fact that defendant did not testify. In one declaration, a juror stated that not only did several jurors discuss the fact that defendant had not testified, they also said that fact "caused them to believe that he was guilty." In a second declaration submitted as part of the prosecutor's opposition filing, that same juror clarified that only one other juror had made a comment regarding defendant's guilt, something like, "'I do feel like he's first degree murder because, since, he didn't want to testify at all,' or words similar to that."[2] Another juror stated, "[n]o one

---

[2] In this second declaration, the juror who made the comment was identified as Juror No. 4.

11

said that this made the defendant more guilty or less guilty, or anything along those lines." The topic only came up once.

The trial court found that if some jurors actually discussed the fact that defendant had not testified, that discussion was brief and immediately followed by other jurors reminding the group not to consider that fact in their deliberations. Only one juror reportedly stated that defendant's failure to testify inclined that juror to believe defendant was guilty of first degree murder. However, the ultimate verdict was second degree murder. Therefore, the trial court found that no misconduct had occurred. Even if the jury engaged in misconduct, the trial court further found that the prosecution met its burden of proving the misconduct was not prejudicial because there was no "substantial likelihood that any juror was improperly influenced in reaching a verdict in the case."

Defendant contends the trial court's analysis was erroneous because defendant's failure to testify affected the verdict of at least one juror, namely Juror No. 4, who reputedly stated defendant's failure to explain his conduct made that juror believe defendant was guilty of first degree murder. We agree the jury engaged in misconduct.

"'[B]y violating the trial court's instruction not to discuss defendant's failure to testify, the jury committed misconduct. [Citations.] This misconduct gives rise to a presumption of prejudice, which "may be rebutted . . . by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm." [Citations.]' [Citation.] We independently review the trial court's determination that defendant was not prejudiced

12

by the improper comments.  [Citation.]" (*People v. Loker* (2008) 44 Cal.4th 691, 749 (*Loker*).)

In *Loker*, jurors discussed the defendant's failure to testify at the penalty phase of his trial.  When the comments were made, another *Loker* juror responded that the defendant not testifying could not be considered in their deliberations.  The jury foreperson in *Loker* also admonished the jurors that the defendant "'had a legal right not to testify and it should not be held for or against him; that it should not be considered one way or the other.  That was the end of it.'" (*Loker*, *supra*, 44 Cal.4th at p. 748.)

In upholding the trial court's ruling that the misconduct was not prejudicial, the court stated, "It is natural for jurors to wonder about a defendant's absence from the witness stand.  [Citation.]  The . . . declarations show that the comments on this subject were brief and played no role in the jury's . . . deliberations.  '[T]he purpose of the rule prohibiting jury discussion of a defendant's failure to testify is to prevent the jury from drawing adverse inferences against the defendant, in violation of the constitutional right not to incriminate oneself.'  [Citation.]" (*Loker*, *supra*, 44 Cal.4th at p. 749.)  In this case, as in *Loker*, "[e]ven if some comments disclosed in the . . . declarations might have given rise to inferences adverse to defendant, the foreperson promptly forestalled that possibility . . . .  Under these circumstances, the purpose of the rule against commenting on defendant's failure to testify was served, and the presumption of prejudice is rebutted." (*Ibid.*)

13

Although the record in this case shows that Juror No. 4 did consider the fact that defendant had not testified as evidence suggesting defendant was guilty of first degree murder, the record also shows the juror was not impermissibly influenced because ultimately the jury unanimously agreed and found defendant guilty of second degree murder.

For the reasons discussed, we conclude that the prosecutor rebutted the presumption of prejudice in this case. Therefore, the trial court correctly denied defendant's motion for new trial.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

CODRINGTON

J.