Filed 4/22/16  In re J.S. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>        Defendant and Appellant. | A143379<br><br>(San Mateo County<br> Super. Ct. No. JV81923) |

        This is an appeal from jurisdictional and dispositional findings and orders in a juvenile matter.  After the juvenile court sustained a charge of second-degree robbery, appellant J.S. (minor) brought this challenge, asserting that his incriminating statements during a custodial interrogation were admitted to his prejudice in violation of his constitutional rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

        On September 5, 2014, a juvenile wardship petition was filed in San Francisco Superior Court charging minor, age 15, with second-degree robbery (Pen. Code, § 211),

and felony assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)).[1] This petition was based upon the following events.

On September 3, 2014, at about 2:45 p.m., two German tourists, Sebastian Teschke and Vivian Weib (hereinafter, victims), were walking near the intersection of Lombard and Jones Streets in San Francisco. As a silver Honda Civic approached, three or four youths wearing back Neoprene masks exited the car and surrounded the victims. One of the youths tried to grab the strap of a single lens camera hanging from victim Teschke's neck. The victims attempted to flee, screaming for help, but two or more of the youths caught up with them. One of these youths, dressed in camouflage pants and later identified as co-defendant O.F., knocked Teschke to the ground and kicked him. Co-defendant W.R. pulled the camera out of Teschke's hands. O.F. pulled the strap on the camera bag until it broke from Teschke's arm. The youths then returned to the Honda Civic, which then sped up Jones Street towards Greenwich Street.

Officer James Lewis, who was on motorcycle patrol at the time, witnessed this robbery as he approached the intersection of Lombard and Jones Streets. After reporting the incident to police dispatch, Officer Lewis ordered the co-defendants to stop, but they ignored him and sped off. Officer Lewis thus activated his lights and siren and pursued them for about eight blocks. However, once the co-defendants reached the intersection of Greenwich and Powell Streets, they jumped out of the car and ran off in separate directions. The driverless Honda Civic continued to roll until eventually crashing into a BMW travelling westbound on Greenwich.

Officer Jason Hui, responding to the scene on his motorcycle, arrived just in time to see four boys tumble out of the Honda Civic and run away. Officer Hui chased three of the boys, one of which was wearing a red shirt and two of which were wearing dark clothing. Eventually, the boys ran into the office of the Joe DiMaggio Playground, heading toward a south side exit door. By this time, however, Officer Hui had reached this door, so the boys turned around and fled out the door they had entered. Shortly

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

2

thereafter, Officer Hui noticed three people hiding underneath nearby parked cars. Officers pulled them out and took them into custody. Officer Hui later identified minor in court as one of the boys that he had chased.

Sergeant Rich Jones was assigned to search the abandoned Civic and found a Canon SLR camera lying on the right front passenger floorboard underneath a neoprene mask. The camera was subsequently returned to the victim.

Witness Gareth Morris participated in "cold show" identification procedures at about 4:20 p.m. on the day in question. Morris identified minor, who was handcuffed and standing by himself next to a police car, as one of the robbery's perpetrators. Specifically, Morris identified minor based on his "Timberland boots and rigid jeans . . . ." Morris also identified co-defendant O.F. based on his camouflage pants. Morris could not, however, identify minor based upon a photograph taken of him at the time of his arrest.

Following the "cold show" procedure, minor was taken to San Francisco's Central Police Station for booking. Just past 7:00 p.m., about four hours after being taken into custody, minor was questioned by Sergeant Jones and Inspector Steve Paulson in the station's lunchroom. The officers asked minor whether he preferred to have a parent or guardian present during the interview. Minor responded that he had been staying with his mother, but did not have her telephone number and, thus, could not call her. When the officers told minor he could chose to not answer their questions without the presence of a parent, or to proceed with the interview by himself, minor responded that he was willing to talk to them without anyone present. Thereafter, minor made incriminating statements, including an admission that he had been with the co-defendants in the Honda Civic, seated in the backseat behind the driver. About seven minutes into the interview, however, minor opted to invoke his right to silence and the interrogation ended.

On September 29, 2014, minor's counsel joined in a motion filed by co-defendants O.F. and W.R. to exclude statements made by the minors in their respective custodial interviews after being arrested. Defense counsel argued minor's custodial statements

3

were involuntary when made, and were not admissible pursuant to the Fifth Amendment of the United States Constitution.

During the subsequent three-day jurisdictional hearing that began September 29, 2014, the juvenile court denied the co-defendants' motion to suppress, leading to the admission of minor's incriminating statements. Specifically, the juvenile court considered the following recorded interview of minor by Sergeant Jones and Inspector Paulson in the lunchroom of San Francisco's Central Police Station at about 7:00 p.m. on the date in question:

"SERGEANT JONES: How old are you?

"[MINOR]: 15.

"SERGEANT JONES: 15. Sir, you have the right to remain silent. Do you understand?

"[MINOR]: Yes, sir.

"SERGEANT JONES: Anything you say may be used against you in court. Do you understand?

"[MINOR]: Yes, sir.

"SERGEANT JONES: You . . . don't have to call me 'sir'. . . . Okay? You have the right to the presence of an attorney before and during any questioning. Do you understand?

"[MINOR]: Yes.

"SERGEANT JONES: If you cannot afford an attorney, one will be appointed to you free of charge before any questioning, if you want. Do you understand?

"[MINOR]: Yes.

"SERGEANT JONES: Um, because you're also a juvenile, you have the right to have your parents here. Uh, do you want me to call Mom or Dad and have them sit here while I speak to you?

"[MINOR]: I don't know — my Mom's the one taking care of me right now. Don't know her number.

"SERGEANT JONES: Okay. That . . . do you want an adult to sit in while I speak to you or is it okay if I speak to you on your own?

4

"[MINOR]: I would like for my Mom to be here but there's no way we can call her.

"SERGEANT JONES: Well, then, I don't think I can speak to you . . . if that's your stance. Now . . . I'm not telling you to change your mind but . . . if you're telling me you want a parent or guardian here first, then there's no way for me to speak to you. So what would you like?

"[MINOR]: Talk.

"SERGEANT JONES: You want to speak to me. So do you want to speak outside of . . . .

"[MINOR]: There ain't nothing to talk about though.

"SERGEANT JONES: Well, I'm gonna get to that. [¶] . . . [¶] Do you want to speak to that outside . . . of the presence of a, uh, guardian then?

"[MINOR]: [T]hat's fine.

"SERGEANT JONES: Okay. That's a choice. Are you comfortable with that?

"INSPECTOR PAULSON: Yeah. You're doing this by your own free will. We didn't coerce you into talking to us right . . . .

"SERGEANT JONES: . . . It should be noted we're in, uh, Central Station's lunchroom. It's approximately 15 feet by 15 feet wide. It's illuminated by, uh, lots of lights, would you say, [minor]? You have to say yes or not. I'm sorry, sir.

"[MINOR]: Yes.

"SERGEANT JONES: Okay. Uh, your current home address?

"INSPECTOR PAULSON: Hey, . . . so when I asked you . . . if we could converse, you . . . shook your head 'no.' Is that correct?

"[MINOR]: What do you mean?

"SERGEANT JONES: Did we convince you to talk to us?

"INSPECTOR PAULSON: You're doing it on your own free will, correct?

"[MINOR]: Yeah.

"INSPECTOR PAULSON: We just need a yes or no.

"SERGEANT JONES: It . . . is your choice, is what we're gettin' at. Do you agree with that?

5

"[MINOR]:  Yeah.  I don't know what's going on.

"SERGEANT JONES:  Well, I'm gonna get to that but we have to get to that point.

"[MINOR]:  Okay.

"SERGEANT JONES:  Okay, there's a whole set of procedures I gotta follow.  Right?

"[MINOR]:  Yeah."

Minor acknowledged being on probation in San Mateo County for "strong-arm robbery," and being the subject of an outstanding arrest warrant.  He also acknowledged having recently run away from home.

The colloquy then continued:

"SERGEANT JONES:  Okay. . . .  Let's just talk about tonight.  Right?  So, um it's important that you not fib at all because it looks exceptionally poor for you.  You understand that?  Yes or no, sir.

"[MINOR]:  Yeah.

 "SERGEANT JONES:  Ok.  Yes? . . . 'yeah' really bothers me.  It's just a personal thing.

"[MINOR]:  Uh, yes.

"SERGEANT JONES:  Thank you very much.  Um.   Where were you sitting in the car?

"[MINOR]:  Left side.

"SERGEANT JONES:  Left, back?  Or, driver.

"[MINOR]:  Behind the driver.

"SERGEANT JONES:  So in the back seat on the far left?  Is that correct?

"[MINOR]:  Yes.

"SERGEANT JONES:  Thank you.  When they stopped the car, did you get out wearing your mask?  You're swinging your head . . . indicating no. . . .  But for the tape, then? . . .

"[MINOR]:  No.

"SERGEANT JONES:  So were you wearing your mask

"[MINOR]:  No.

"SERGEANT JONES:  Did you put a mask on after that?

"[MINOR]:  No.

"SERGEANT JONES:  Okay. Did you have a hoodie?

6

"[MINOR]: No.

"SERGEANT JONES: What were you wearing?

"[MINOR]: My jacket.

"SERGEANT JONES: Your jacket. What color is your jacket, sir?

"[MINOR]: Black.

"SERGEANT JONES: What kind of jacket?

"[MINOR]: Columbia. [¶] . . . [¶] Like a North Face. [¶] . . . [¶]

"SERGEANT JONES: The . . . nylon ones, right? Okay. Um. Did you make it all the way across the street?

"[MINOR]: Yes.

"SERGEANT JONES: Yes. You didn't take the camera. Just the camera. Just the actual, physical camera. Is that correct?

"[MINOR]: Yes.

"SERGEANT JONES: Yes, you did not take it? That was a convoluted question. Let me re-word it so that you don't get confused. Did you take the camera itself?

"[MINOR]: No.

"SERGEANT JONES: No. You just took the bag. Is that correct?

"[MINOR]: No bag.

"SERGEANT JONES: The black bag, that you handed over? You didn't take it?

"[MINOR]: Huh-uh.

"SERGEANT JONES: Oh, okay. Did you see who took it? I'm not asking for names. Okay. Did you see that it was taken?

"[MINOR]: No.

"SERGEANT JONES: Oh, you weren't there.

"[MINOR]: No.

"SERGEANT JONES: Oooh.

"[MINOR]: I didn't see what happened."

Following this exchange, minor denied getting out of the car to participate in the robbery, and suggested his co-defendants were liars. Minor then asked for an attorney,

7

and the interview immediately ended.

On October 1, 2014, the juvenile court sustained the second-degree robbery charge against minor (as well as co-defendants O.F. and G.E.), and dismissed the felony assault charge.[2]  The juvenile court then declared the maximum term of minor's confinement to be five years, four months, and transferred the matter to San Mateo County juvenile court for disposition.

On October 9, 2014, the San Mateo County juvenile court accepted transfer before accepting minor's admission of a notice of probation violation filed June 27, 2014, for leaving his mother's residence and posting photographs of himself holding a gun on social media.  On October 23, 2014, the juvenile court continued minor's wardship and committed him to Camp Glenwood, a residential juvenile program in San Mateo County, subject to various terms and conditions.  This timely appeal followed.

## DISCUSSION

The primary contention raised by minor on appeal is that the juvenile court violated his constitutional rights under the Fifth Amendment of the United States Constitution by admitting into evidence incriminating statements improperly obtained from him by police officers during a custodial interrogation.  Specifically, minor contends the court committed prejudicial error by denying his motion to suppress these statements because the interrogating officers failed to adequately apprise him of his *Miranda* rights, or to obtain his knowing and voluntary consent to waive these rights.  In a related argument, minor contends his trial counsel provided ineffective legal assistance to the extent counsel failed to properly preserve these issues for review on appeal.  We address minor's contentions below to the extent appropriate.

**Admission of Minor's Custodial Statements During His Police Interview.**

The law of *Miranda* is well-established.  "[U]nder the due process clause of the Fourteenth Amendment to the United States Constitution . . . an involuntary statement obtained by a law enforcement officer from a criminal suspect by coercion is

---

[2]    Co-defendant W.R. was acquitted of all charges.

8

inadmissible in a criminal proceeding." (*People v. Neal* (2003) 31 Cal.4th 63, 67.) As such, a statement obtained by an officer from a suspect during a custodial interrogation "may be admitted in evidence only if the officer advises the suspect of both his or her right to remain silent and the right to have counsel present at questioning, and the suspect waives those rights and agrees to speak to the officer." (*Ibid*.) If at any time the suspect indicates that he does not wish to speak, or to continue to speak, to the officer, the interrogation must end and may not resume unless and until counsel is present or the suspect voluntarily initiates further contact. (*Ibid*.)

The prosecution bears the burden of proving the defendant's waiver of rights and subsequent incriminating statements were voluntarily, knowingly and intelligently made. (*People v. Whitson* (1998) 17 Cal.4th 229, 248.) A showing of voluntariness must be based on "all the surrounding circumstances. . . ." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 226.) "[I]n determining whether a juvenile has knowingly and voluntarily waived his or her rights under *Miranda*, the court should consider the totality of the circumstances surrounding the confession, including the juvenile's age. (See *Fare v. Michael C.* (1979) 442 U.S. 707, 720-723 . . . (*Fare*) [finding 16 year old's request to speak with his probation officer was not invocation of right to remain silent, reviewing totality of the circumstances of interrogation]; *People v. Lessie* (2010) 47 Cal.4th 1152, 1169-1170 . . . [applying totality of circumstances test to find that 16 year old had not invoked 5th Amend. rights when he asked to speak with his father during interrogation].)" (*In re Art T.* (2015) 234 Cal.App.4th 335, 351.) "Where the age and experience of a juvenile indicate that his request for his probation officer or his parents is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination. At the same time, that approach refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation." (*Fare, supra*, 442 U.S. at pp. 725-726.)

On appeal, we "must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained. [Citation.]' " (*People v. Johnson* (1993) 6 Cal.4th 1, 25.)

## A. Adequacy of the *Miranda* warnings Received by Minor.

We turn first to the issue of the adequacy of the *Miranda* warnings provided to minor. Significantly, minor concedes the admonition delivered by Officer Jones was "technically correct." Minor argues, nonetheless, that the officer's delivery failed to "effectively apprise[]" him of his *Miranda* rights because it was too fast and too casual, and because the officer failed to take extra steps to either modify the admonition in a more age-appropriate fashion, or to "read each warning slowly, stopping to ask [him] after each individual warning to explain it back in his . . . own words."

We reject these arguments. First, we know of no case law requiring these extra measures to be employed when *Miranda* warnings are given to a juvenile, particularly one, like minor, who was nearly 16 years old at the time of the interrogation and, as reflected by his substantial juvenile record, had numerous past experiences with custodial interrogations by police officers. Moreover, our review of the transcript from minor's interrogation in this case clearly reflects that the officers appropriately delivered each individual warning, and waited for minor's affirmation that he understood the warning, before proceeding to the next warning. Under these circumstances, we find no inadequacy in the officers' delivery of the admonition required by *Miranda*, notwithstanding minor's juvenile status.

## B. Voluntariness and Intelligence of Minor's Waiver.

Next, with respect to whether minor's waiver of his Fifth Amendment rights was knowing, intelligent and voluntary, we find numerous factors in this record weighing in favor of the juvenile court's affirmative finding. We identify the most relevant of these factors, beginning with minor's personal characteristics and his lengthy involvement in

10

the juvenile justice system.  Specifically, as just mentioned, minor was nearly 16 years old at the time of his arrest; he had at least three prior arrests, dating to 2011, including one for attempted robbery of a tourist that had many commonalities with the current offense; he was already a ward of the juvenile court and, in fact, was on formal juvenile probation at the time of arrest in this case; he had received *Miranda* warnings while in custody at least three times previously; he had known gang associations; and he was enrolled in high school in the general (non-special needs) program.

Given the totality of these circumstances, we reject minor's claims that his *Miranda* waiver was unknowing, unintelligent and involuntary.  To the contrary, minor, who already had a lengthy juvenile record at age 15 and ten months, was approaching the age of maturity while continuing to commit crimes that appeared to be increasing in severity, despite being granted formal probation by the juvenile court in lieu of out-of-home placement on several previous occasions.  As such, his claims to have been coerced or otherwise manipulated by the officers into giving up his Fifth Amendment rights on this occasion ring hollow.  (See *Fare, supra*, 442 U.S. at pp. 725-726 [concluding a juvenile had voluntarily and knowingly waived his Fifth Amendment rights where the record demonstrated he was 16½ years old at the time of the custodial interview, had a wealth of prior experience with the juvenile justice system, including several prior arrests during which he had his *Miranda* rights explained to him, and had clearly expressed his understanding of, and willingness to waive, his *Miranda* rights during the most recent interrogation].  Cf. *In re Elias V.* (2015) 237 Cal.App.4th 568, 591 ["At 13 years of age, Elias was a young adolescent, there is no indication in the record he was particularly sophisticated, and he had no prior confrontations with the police. [The officer] interrogated him in a small room at his school, with the school principal and a second officer present, and another officer outside the door. There is every reason to believe the aggressive, deceptive, and unduly suggestive tactics [the officer] employed would have been particularly intimidating in these circumstances"].)

Further, we reject minor's related contention that he effectively invoked his Fifth Amendment right to remain silent by telling Officer Jones that he would like to talk to his

11

mother.  The relevant record, set forth in full above, is not consistent with minor's claim.  Specifically, the record reflects that, while minor did indicate to the officers that he would like to speak to his mother, he also acknowledged not having her phone number and, thus, not being able to contact her.  Officer Jones then directly posed to minor the choice to remain silent or to talk to them in the absence of either a parent or guardian, telling minor:  "[I]f you're telling me you want a parent or guardian here first, then there's no way for me to speak to you.  So what would you like?"  Minor then quite clearly responded:  "Talk."

Further, Officer Jones took the extra step to ask minor to clarify whether he would be willing to talk to them "outside . . . of the presence of a, uh, guardian," to which minor responded, "that's fine."

Having considered this record as a whole and in proper context, we conclude there is no basis to interpret minor's initial statement that he would prefer to speak to his mother as a clear and unambiguous invocation of his *Miranda* rights, which is what the law requires.  (*People v. Gonzalez* (2005) 34 Cal.4th 1111, 1127 ["If 'a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel,' questioning need not cease"]; *People v. Bacon* (2010) 50 Cal.4th 1082, 1107 ["defendant's invocation of the right to counsel must be clear and unambiguous"].  Cf. *Fare, supra*, 442 U.S. at pp. 723-724 ["since a probation officer does not fulfill the important role in protecting the rights of the accused juvenile that an attorney plays, we decline to find that the request for the probation officer is tantamount to the request for an attorney . . . [although] courts may take into account such a request in evaluating whether a juvenile in fact had waived his *Fifth Amendment* rights before confessing"].)

Accordingly, we affirm the juvenile court's denial of minor's motion to suppress his custodial statements given the lack of any showing that his *Miranda* rights were violated.  Further, as result of our conclusion in this regard, we need not consider minor's contingent claim that he was prejudiced by the juvenile court's admission of the incriminating statements he made to the officers after his asserted invocation of *Miranda*

12

rights.  Simply put, because the juvenile court's admission of minor's incriminating statements was appropriate, any prejudice flowing from the incriminating nature of his statements cannot be deemed undue.  (See *People v. Bacon, supra,* 50 Cal.4th at p. 1108.)

And, finally, because we have fully addressed the merits of minor's *Miranda* claims, we need not address his alternative argument that he was denied effective assistance of counsel due to his attorney's failure to properly preserve these claims for review on appeal.  The judgment stands as is.

## DISPOSITION

The juvenile court's jurisdictional and dispositional findings and orders are affirmed.


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Pollak, J.