Filed 8/24/22  P. v. Walsworth CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>      v.<br><br>ADAM WALSWORTH,<br><br>        Defendant and Appellant. | C094272<br><br>(Super. Ct. No. 20FE014424) |

Defendant Adam Walsworth molested his daughter A.D.  His defense was that he was unconscious -- that is, not aware of his actions.  Convicted of committing a lewd act, he appeals.

Defendant now contends (1) the trial court abused its discretion and violated his due process rights by admitting character evidence in the People's case-in-chief, (2) the trial court erred by adding additional language requested by the People to the jury instruction on the defense of unconsciousness, and (3) the cumulative impact of the errors was prejudicial and violated his due process rights.

We agree the trial court abused its discretion by admitting character evidence and erred by adding language to the instruction on the defense of unconsciousness.  We also

1

agree the errors were cumulatively prejudicial and require reversal and remand for a new trial. Having so concluded, we need not determine whether the errors violated defendant's due process rights. We also need not consider defendant's remaining contentions on appeal.

BACKGROUND

In 2017, when A.D. was 11 years old, she stayed with defendant, her father, over the weekend, in a rented room of a home. The room had a bunk bed, and A.D. usually slept on the top bunk while defendant slept on the bottom bunk. However, A.D. occasionally fell asleep on the bottom bunk and slept with defendant. There were also times when A.D. slept with defendant on the top bunk.

A.D. fell asleep on the bottom bunk with defendant, who was closer to the wall. A.D. woke up in the night and felt defendant touching her vagina under her clothing. A.D. was not sure how long the touching lasted, but it seemed to her that it was 10 or 15 minutes. Defendant moved his fingers up and down and in a circular motion, pressing hard and touching her labia and clitoris. A.D. did not know if defendant's fingers penetrated the vaginal canal. She was scared, so she did not do anything to stop him.

Eventually, defendant stopped touching A.D., climbed over her, and went to the bathroom down the hall. Defendant stayed in the bathroom about 45 minutes and then returned to the bedroom. When defendant returned to the bedroom, A.D. had moved to the top bunk. Defendant told her he had a dream about making out with his former wife, and asked her why she was awake. A.D. did not think defendant was drunk.

In 2020, three years after the molestation, A.D. reported it to her mother and to the Sacramento County Sheriff's Department. She told a detective defendant may have been asleep or drunk when it happened. With the detective's help, A.D. made a pretext call to defendant. A recording of much of the call was played for the jury during the People's case-in-chief.

2

In the pretext call, A.D. said she was getting counseling for symptoms of post-traumatic stress disorder and wanted to talk to him about a night when he had a weird dream about his former wife. Defendant said he was "kind of remembering, but I can't remember what happened." Defendant said he did not remember, but if he did something wrong it was a mistake. A.D. asked whether he touched her around her vagina, and defendant said he did not mean to if he did it but did not remember. For the remainder of the conversation, defendant claimed he did not remember and was asleep or drunk.

After the pretext call was played for the jury, the prosecutor asked A.D. whether she believed defendant when he said he did not remember. She responded: "No, um. I mean, kind of -- I don't know. Um, not really 'cause he kept kind of stuttering. I don't know. I just sort of -- it's complicated, I guess. I don't know -- I had really mixed feelings." She testified she believed the touching was intentional.

P.W. is A.D.'s older sister and defendant's other daughter. She testified that, when she was 12 or 13 years old, defendant came into her bedroom while she was asleep. Defendant stood next to the bed and lightly touched the left side of P.W.'s back, shoulder, or arm. P.W. woke up and told defendant to get out of her room, which he did. Asked about whether she knew defendant to be a sleepwalker, P.W. said: "Kind of, like I do remember there being sometimes where he would be like half asleep in places, and it would be kind of weird. I remember that kind of vaguely, that he would have some weird things in his sleep or he would do stuff in his sleep that he wouldn't remember or stuff like that." Asked whether she believed defendant was sleepwalking when he touched her in her bedroom, P.W. said: "Um, I guess I can't say for sure if he was, but -- yeah, I can't say for sure whether he was or wasn't. I really don't know. I mean, yes, I know that was something that he would do, but I can't say whether he was sleepwalking or not, because I honestly don't know."

Defendant's defense was that, if he molested A.D., he was unaware of what he was doing. In closing argument, defense counsel argued that, if defendant committed a

3

lewd act, he did so without the intent necessary to be convicted of a crime. Defense counsel quoted CALCRIM No. 3425, as follows: "A defendant is not guilty of committing a lewd act on a child if he acted while unconscious. Someone is unconscious when he or she is not conscious of his or her actions." Defense counsel reminded the jury that if there was a reasonable doubt about whether defendant was aware of his actions, the jury was required to acquit.

The jury convicted defendant of a lewd act on a child under 14 years old, and the trial court sentenced defendant to the middle term of six years. (Pen. Code, § 288, subd. (a).)[1]

## DISCUSSION

### I

Defendant contends the trial court abused its discretion and violated his fair trial rights by admitting character evidence in the People's case-in-chief. The People acknowledge the trial court abused its discretion in admitting the character evidence but assert the error was not prejudicial. We will address prejudice in part III of the discussion.

While evidence of a defendant's character is generally inadmissible to prove conduct on a specific occasion (Evid. Code, § 1101, subd. (a)), a criminal defendant may introduce evidence of his or her character to prove conduct conforming to that character (Evid. Code, § 1102, subd. (a)). However, if a defendant introduces such evidence, the prosecution may also present evidence of the defendant's character in rebuttal. (Evid. Code, § 1102, subd. (b); *People v. Tuggles* (2009) 179 Cal.App.4th 339, 357.)

The prosecution introduced the pretext call in its case-in-chief. It then introduced evidence of defendant's character over defendant's objection. Defendant's former wife

---

[1] Undesignated statutory references are to the Penal Code.

4

testified that defendant is untruthful, manipulative, calculating, and "absolutely charismatic." The trial court said admission of the character evidence was appropriate given the admission of the pretext call; according to the trial court, because the pretext call put in issue defendant's character, the prosecution could introduce evidence of that character.

However, because the prosecution introduced the pretext call, not defendant, the admission of evidence of defendant's bad character through testimony from his former wife violated Evidence Code section 1102. Defendant did not first offer evidence of his character, so the prosecution's character evidence was inadmissible. Admitting the evidence was an abuse of discretion. (Evid. Code, §§ 1101, 1102; *People v. Hall* (2018) 23 Cal.App.5th 576, 592.) Given our ultimate conclusion in this appeal, we need not address defendant's additional argument that admission of the evidence violated his due process rights.

II

Defendant next contends the trial court erred by adding additional language requested by the People to the jury instruction on the defense of unconsciousness.

When a defendant claims instructional error, we must determine whether the trial court correctly conveyed the law to the jury and whether there is a reasonable likelihood the jury understood the instruction in the way argued by the defendant on appeal. (*People v. Kelly* (1992) 1 Cal.4th 495, 525 (*Kelly*).)

The trial court instructed the jury on unconsciousness using CALCRIM No. 3425. Over defendant's objection, the trial court added language supplied by the prosecutor. As given, the instruction stated: "The defendant is not guilty of committing a lewd and lascivious act on a child under the age of 14 if he acted while unconscious. Someone is unconscious when he or she is not conscious of his or her actions. Unconsciousness may be caused by a sleepwalking disorder. The defense of unconsciousness may not be based on voluntary intoxication. *A defendant's inability to remember or his hazy recollection*

5

*does not supply an evidentiary foundation for unconsciousness. It must be something more than the defendant's mere statement that he does not remember what happened to justify a finding that he was unconscious at the time of the act.*" (Italics added.) The italicized part of the instruction was added by the trial court and is not found in CALCRIM No. 3425.

The defense argued that the precedent upon which the People relied to proffer the additional language in the instruction was distinguishable on the facts, but the trial court explained there was no evidence in this case that defendant committed the offense in his sleep. "Nobody has come in and said yes, it's medically possible for him to do this while he is asleep." The trial court said the only thing supporting that theory was defendant repeatedly saying he must have been asleep. The additional language in the instruction would tell the jury there needs to be more. The trial court acknowledged that the defense could argue there *was* something more, that A.D. did not know if defendant was awake or not. But the trial court concluded the additional language was appropriate.

"[U]nconsciousness is a complete defense except where it is caused by voluntary intoxication." (*People v. Heffington* (1973) 32 Cal.App.3d 1, 8 (*Heffington*); see also § 26.) It "need not reach the physical dimensions commonly associated with the term (coma, inertia, incapability of locomotion or manual action, and so on); it can exist . . . where the subject physically acts in fact but is not, at the time, conscious of acting." (*People v. Newton* (1970) 8 Cal.App.3d 359, 376 (*Newton*).) The unconsciousness defense can be raised by the defendant's own lack of recollection of the criminal act (*ibid.*), although a defendant's inability to recall some details of the incident is insufficient to raise the defense (see *People v. Halvorsen* (2007) 42 Cal.4th 379, 418). The unconsciousness defense seeks to negate the intent element of the crime, which is that the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the defendant or the child. (§ 288, subd. (a).)

The authority for the added instructional language appears to be *Heffington, supra*, 32 Cal.App.3d 1. There, the Court of Appeal considered a claim of unconsciousness in the context of California Supreme Court precedent and wrote: "Defendant relies upon [California Supreme Court cases] as authority for the proposition that a defendant's inability to remember or his 'hazy' recollection supplies an evidentiary foundation for a jury instruction on unconsciousness. Neither [case] announces an ineluctable rule of law so divorced from reality. Both were individualized decisions in which the court examined the record and found evidence, no matter how incredible, warranting the instruction. Here, in contrast, we find no evidence 'deserving of consideration' that defendant was unaware of his actions." (*Id*. at p. 10.)

The court in *Heffington* found no error in declining to instruct on unconsciousness because the only evidence of unconsciousness was the defendant's claim he did not remember. (*Heffington, supra*, 32 Cal.App.3d at p. 10.) Here, of course, defendant made multiple statements that he did not remember the incident. Those statements were made known to the jury when the People introduced the pretext call. He said, with several variations, "I don't remember. I was asleep," and "I do not remember the event." But unlike in *Heffington*, defendant's statements that he did not remember the incident were just part of the evidence. At the time of the incident, defendant told A.D. he had a dream about making out with his former wife. A.D. told a detective it was possible defendant was asleep or drunk during the incident. She testified that she and defendant fell asleep together. A.D. was still asleep when defendant started touching her. During the incident, A.D. did not hear anything from defendant, and she did not see whether his eyes were open. A.D. could not say for sure defendant was awake while he was touching her. During the pretext call, A.D., at one point, told defendant she believed him when he said he did not remember the incident. Defendant's other daughter, P.W., testified in the People's case-in-chief that defendant "would have some weird things in his sleep or he would do stuff in his sleep that he wouldn't remember" and that "he did have those like

7

kind of weird sleeping issues like with sleepwalking and stuff like that." We do not suggest that the jury should have believed this evidence; that is not our role on appeal. We simply note there was evidence in this case, beyond defendant's statements that he did not remember, that could support an inference by the jury that defendant was unaware of his actions.

The trial court instructed the jury that a defendant's inability to remember does not supply an evidentiary foundation for unconsciousness. There is a reasonable likelihood the jury construed this added instructional language to mean that the jury could not consider defendant's inability to remember when it decided whether he was aware of his actions. (See *Kelly, supra*, 1 Cal.4th at p. 525 [reasonable likelihood test].) But a defendant's inability to remember can be evidence of unconsciousness. (See *Newton, supra*, 8 Cal.App.3d at p. 376 [defense of unconsciousness supported by defendant's inability to remember].)

The trial court also instructed the jury that there must be something more than the defendant's mere statement that he does not remember to justify a finding that he was unconscious. Even if that part of the added language accurately reflected the law, defendant was entitled to have the jury consider all of the evidence -- including his statements that he did not remember -- in deciding whether he was aware of his actions, and the prior part of the added language likely prevented that.

III

Defendant claims the cumulative impact of the errors was prejudicial and violated his due process rights.

Regarding the evidentiary error discussed in part I, we must determine whether it is reasonably probable defendant would have obtained a better result if the character evidence had not been admitted. (*People v. Rivera* (1985) 41 Cal.3d 388, 393 overruled on other grounds in *People v. Lessie* (2010) 47 Cal.4th 1152, 1168, fn. 10; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) As for the instructional error discussed in

8

part II, the standard is the same: whether it is reasonably probable defendant would have obtained a better result if the jury had been properly instructed. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 94.) A better result includes the possibility of a hung jury. (See *People v. Soojian* (2010) 190 Cal.App.4th 491, 521.) The *Watson* reasonable probability standard of prejudice is met if there is a reasonable chance a single juror would not have found the defendant guilty beyond a reasonable doubt. (*Id*. at pp. 519-521.) In making this determination, we must consider whether there is prejudice from cumulative error. (*People v. Hill* (1998) 17 Cal.4th 800, 844.)

If an error violated a defendant's federal constitutional due process rights, the standard of prejudicial error is whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].) But we need not consider the federal prejudicial error standard because, even though defendant asserts the errors violated his federal rights, we find the state-law errors, cumulatively, resulted in prejudice and require reversal of the conviction.

The errors in this case impacted defendant's main theory -- that he was unaware of what he was doing. Defendant said he did not remember or that he was asleep or drunk. But the inadmissible character evidence indicated defendant was untruthful, manipulative, calculating, and charismatic, likely damaging defendant's credibility. And the improperly added language in the challenged instruction informed the jury that the failure to remember does not supply an evidentiary foundation for unconsciousness, making it even more likely that the jury would ignore defendant's statements that he did not remember.

While the errors created obstacles to the main defense theory, we must examine the entire cause to determine whether it was reasonably probable defendant would have obtained a more favorable result absent the errors. (*Watson, supra*, 46 Cal.2d at pp. 836-837.) It was not seriously disputed that defendant touched A.D. The manipulation of A.D.'s vagina had the hallmarks of an intentional act of sexual gratification and an

9

attempt to arouse. After touching A.D., defendant climbed over A.D. and went to the bathroom for an extended period of time. In the pretext call, he did not challenge A.D.'s version of what happened, but merely said he was asleep and did not remember. Additionally, as the trial court noted, defendant offered no expert testimony to bolster his unconsciousness defense.

While there may be sufficient evidence in this case to support a conviction and to reject defendant's unconsciousness defense, because the evidentiary and instructional errors went to the heart of defendant's theory, we cannot say with confidence that the errors were not cumulatively prejudicial, i.e., that absent the errors, the jury -- or a single juror -- would not have determined that the People had failed to prove defendant guilty beyond a reasonable doubt, particularly given the evidence that defendant had done weird things while asleep. We therefore reverse and remand for a new trial.

Accordingly, we need not consider defendant's remaining contentions, which include asserted error in admitting evidence defendant entered the room of his other daughter on another occasion and touched her arm and side, computing the number of days of defendant's presentence custody credit, and imposing a booking fee.

DISPOSITION

The judgment is reversed and the matter is remanded for a new trial.

 

                                   _____/S/_____
                                    MAURO, Acting P. J.

We concur:


_____/S/_____
HOCH, J.


_____/S/_____
KRAUSE, J.

10